

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**FLOYD RONALD BURKE,
on behalf of himself and others
similarly situated,**

           **Plaintiffs,**

**v.**                                                  **Civil Action No. 3:14cv837**

**NATIONSTAR MORTGAGE LLC,
EVERBANK, EVERBANK FINANCIAL
CORPORATION, EVERHOME MORTGAGE
LLC, and JOHN DOE COMPANY,**

           **Defendants.**

## MEMORANDUM OPINION

THIS MATTER comes before the Court on the Motion for Judgment on the Pleadings

filed by Defendant Nationstar Mortgage LLC ("Nationstar") pursuant to Federal Rule of Civil

Procedure 12(c).[1]  ECF No. 25.  Nationstar contends that Plaintiff Floyd Ronald Burke fails to

state a claim against Nationstar upon which relief can be granted.  Burke opposes the motion.

ECF No. 29.  For the reasons that follow, the Court will grant in part and deny in part

Nationstar's Motion for Judgment on the Pleadings.

## I. PROCEDURAL HISTORY

On December 16, 2014, Burke filed a seven-count Class Action Complaint in this Court,

alleging the following: "breach of contract for breach of [the] implied covenant of good faith and

fair dealing," ("Count I"); a class claim ("Count II") and an individual claim ("Count III") for

violations of the Federal and Virginia Equal Credit Opportunity Act ("ECOA"); violation of the

Real Estate Settlement and Procedures Act ("RESPA") ("Count IV"); violations of the Fair Debt

Collection Practices Act ("FDCPA") ("Counts V and VI"); and breach of contract ("Count VII").

---

[1] Federal Rule of Civil Procedure 12(c) provides:  **"(c) Motion for Judgment on the Pleadings.** After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

On March 13, 2015, Defendants Nationstar and Everbank (collectively, the "Defendants")

moved to dismiss Count I, Count III, Count V, and Count VI of the Complaint (the "Motion to

Dismiss"). ECF No. 11. On April 17, 2015, Burke filed a response and voluntarily withdrew

Counts V and VI, the FDCPA claims alleged in the Class Action Complaint. ECF No. 18. The

Court subsequently granted the Motion to Dismiss with respect to Count I.

On October 13, 2015, Nationstar filed the Motion for Judgment on the Pleadings, seeking

to dismiss the remaining claims: Count II, Count III, Count IV, and Count VII. ECF No. 25.

Burke filed a response on November 11, 2015. ECF No. 29. On December 1, 2015, Nationstar

filed a reply. ECF No. 30. This matter is now ripe for review.

## II. FACTUAL BACKGROUND[2]

Burke purports to represent a class of homeowners who have been damaged by

Nationstar's alleged failures to comply with applicable law in connection with their mortgage

loan modification requests. The following is taken from the facts as set forth in Burke's

Complaint and echoed in this Court's Opinion on the Motion to Dismiss. Where appropriate,

the Court additionally notes allegations as set forth by Nationstar, some of which the Court may

consider on a Rule 12(c) motion.[3]

In June of 2008, Burke "executed a Note in the principal sum of $101,246.00 and Deed

of Trust secured by his primary residence and backed by the Federal Housing Administration

('FHA')." Complaint ("Compl.") ¶ 14. On or about July 1, 2008, after Burke executed the loan

---

[2] The Court assumes familiarity with the facts of this case as set forth in its Memorandum Opinion, which denied in part and granted in part the Defendants' Motion to Dismiss. *Burke v. Nationstar Mortg., LLC*, No. 3:14cv837, 2015 WL 4571313, at *8 (E.D. Va. July 28, 2015). The Court, nonetheless, repeats the facts set forth in that Memorandum Opinion to the extent necessary to resolve Nationstar's Motion for Judgment on the Pleadings.

[3] "[O]n a Rule 12(c) motion the Court may consider the Answer as well, and the factual allegations in the Answer are taken as true to the extent they have not been denied or do not conflict with the Complaint." *Pro-Concepts, LLC v. Resh*, No. 2:12CV573, 2014 WL 549294, at *5 (E.D. Va. Feb. 11, 2014) (citation omitted); *see also Bremus v. AMR Corp.*, 527 B.R. 221, 225 (E.D. Va. 2014) ("District courts may consider the complaint, answers, matters of public record, exhibits to the complaint and answer, and 'exhibits to the Rule 12(c) motions that were integral to the complaint and authentic.'" (quoting *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir.2014))), *aff'd*, 604 F. App'x 324 (4th Cir. 2015).

documents, "Bank of America acquired the servicing rights for [his] mortgage." *Id.* ¶ 23. In 2011, Burke "experienced financial hardship due primarily to divorce" and "filed [for] Chapter 7 bankruptcy," but "filed a Statement of Intention to reaffirm his mortgage debt to Bank of America." *Id.* ¶¶ 24–25. When Burke received his bankruptcy discharge in November of 2011, he was "current on his mortgage." *Id.* ¶ 26.

On November 14, 2012, Burke, still "current on his mortgage" payments of "757.27 per month," applied to Bank of America for a new loan in the form of "a loan modification." *Id.* ¶¶ 27–28. Subsequently, "[b]y letter dated November 20, 2012, Bank of America informed [Burke] that it had received his application for loan modification and requested additional income documentation, which [he] immediately provided." *Id.* ¶ 30. Thereafter, "Bank of America notified [Burke] that servicing of the loan had been transferred to Nationstar beginning December 4, 2012." *Id.* Burke then started "making payments of $739.90 to Nationstar."[4] *Id.* ¶¶ 31. According to Nationstar, the initial payment "was subsequently returned and reversed due to an invalid account number." Answer ¶ 31.

"In January 2013, [Nationstar] sent a letter to [Burke] offering review for Home Affordable Modification Program (HAMP)," to which Burke responded by "submit[ing] the completed application and required documents." Compl. ¶ 32. On "February 2, 2013, Nationstar Mortgage sent a letter to [him] stating he was in default for the January 1, 2013 and February 1, 2013 payments." *Id.* ¶ 33.

Burke alleges that "[i]n May 2013, his mortgage payment increased to $747.28 per month." *Id.* ¶ 34. On May 22, 2013, Nationstar informed Burke that "he had been approved to enter into a Trial Period Plan [("TPP")] . . . under the FHA HAMP Modification Program." *Id.* ¶ 35. Specifically, Burke alleges that the letter approving the TPP provided:

> Congratulations! You are approved to enter into a trial period plan under the
> FHA HAMP Modification Program. This is the first step toward qualifying for

---

[4] The Complaint does not provide why Burke began making payments in the amount of $739.90 instead of $757.27 (*i.e.*, the amount Burke alleges he was paying in November prior the loan being transferred from Bank of America to Nationstar).

more affordable mortgage payments. Please read this letter so that you understand all the steps you need to take to modify your mortgage payments.

*Id.* ¶ 36. According to Burke, with respect to payments, the letter from Nationstar instructed:

What you need to do . . . To accept this offer, you must make new monthly "trial period payments" in place of your normal monthly mortgage payment. Send your monthly trial period payments instate [sic] of your normal monthly mortgage payment as follows:

- 1st payment: $575.40 by 7/1/2013

- 2nd payment: $575.40 by 8/1/2013

- 3rd payment: $575.40 by 9/1/2013

- 4th payment: $575.40 by 10/1/2013

*Id.* ¶ 37; *see also* Answer ¶ 37. The letter further provided that Nationstar was "not obligated or bound to make any modification of the Loan Documents" and that Nationstar would "hold the payments received . . . in a non-interest bearing account until they total an amount that is enough to pay [Burke's] oldest delinquent monthly payment on [the] Loan in full." May 22, 2013 Letter from Nationstar to Burke at 3 (ECF No. 26-2).

During the trial period, Burke alleges that "he made all four payments of $575.40, due July 1, August 1, September 1, and October 1." Compl. ¶ 38; *see also* Answer ¶ 35. During this trial loan modification period, however, Burke continued to receive monthly statements from Nationstar in the amount of $747.28 per month. Compl. ¶ 38. The Complaint provides that after Burke contacted Nationstar to "inquire about the correct amount that should be paid for the mortgage," a "Nationstar representative informed [Burke] not to worry about the amount that was in his monthly statements" and instructed him to "continue to pay per the TPP instructions." *Id.* ¶ 39.

In November 2013, after completing the trial loan modification, Burke "received permanent Loan Modification documents from Nationstar," which he alleges to have "signed and notarized" before sending them back to Nationstar. *Id.* ¶¶ 41–42. Burke further asserts that the documents provided that his modified mortgage payment would be $569.42 per month. *Id.*

4

¶ 41. Nationstar points out that "the Loan Modification Agreement expressly provided, 'Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, *if approved and accepted by the Lender*, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower." Answer ¶ 41. The Loan Modification Agreement also instructed Burke to "sign and have the documents notarized." *Id.* Moreover, the Loan Modification documents warned that the "modification [would] not be processed unless Nationstar receive[d] the original documents by [the] due date." Loan Modification Agreement at 7 (ECF No. 26-3).

Although he "continued to make timely payments" in the amount of $575.90, Burke continued to receive "Notice[s] of Default and Intent to Accelerate." Compl. ¶¶ 43–45, 49, 51, 53. Burke asserts that he called Nationstar "numerous times regarding the notices of default and always got a different Nationstar representative who gave him a different answer." *Id.* ¶ 46.[5] Burke made "three payments of $575.90 during the month of February 2014 based on his concern that he kept getting conflicting information from the Nationstar representatives" and receipt of "threats by Nationstar of its intent to accelerate." Compl. ¶ 48; *see also id.* ¶¶ 49–53.

On March 19, 2014, "Nationstar sent a letter to [Burke] advising [that] he ha[d] been denied a loan modification" for the following reason: "Denial Reason: Offer Not Accepted by Borrower/Request Withdrawn." *Id.* ¶ 54. After receiving the correspondence, denying his loan

---

[5] Relying on its Answer and attachments thereto, Nationstar refutes Burke's general allegation that Nationstar provided different responses with respect to Burke's questions regarding the notices of default.

To the contrary, Nationstar avers the following. On December 11, 2013, "a Nationstar representative informed [Burke]'s wife . . . that there was a problem with the mod being booked.'" Answer ¶ 44. On January 3, 2014, Burke authorized Jill Copely to speak to Nationstar on his behalf. Collection History Profile at 22 (ECF No. 24-1). Nationstar then informed Copely that the "mod docs [were] returned but not notarized." *Id.* On January 17, 2014, a Nationstar representative called Burke's residence and business, but received "NO ANSWER." *Id.* at 23. On February 11, 2014, Burke called Nationstar and was informed that the "mod docs were not notarized correctly." *Id.* at 25. On February 12, 2014, the documents were "sent to [Burke] via Mail." *Id.* On February 26, 2014, Burke claimed that he did not receive the documents and, on the same day, they were again mailed to him. *Id.* at 27. "[O]n March 5, 2014, Nationstar sent [Burke] a Notice of Default and Intent to Accelerate." Answer ¶ 53. Then, Burke called Nationstar to find out "why he [received] a letter showing he was delinquent," and a Nationstar representative informed Burke that the Loan Modification "documents were filled out incorrectly, so that is why" the modification had not been booked. Collection History Profile at 28.

modification, Burke called Nationstar and "spoke with Laura, who stated that he didn't qualify for trial loan modification because he didn't make the payments." *Id.* She further "stated that Loan Modification documents were filled out incorrectly, notarized incorrectly, [and] missing [a] notary stamp." *Id.* ¶ 57.

According to Nationstar, Burke's counsel then "sent Nationstar a letter . . . to request information regarding his loan, dispute the mortgage loan statement sent to [Burke] on March 18, 2014, and dispute the March 18, 2014 denial of [Burke]'s loan modification." Answer ¶ 65. Nationstar subsequently sent Burke "a letter on April 11, 2014, acknowledging [Burke]'s April 7, 2014 correspondence and stating its goal to provide a response no later than May 22, 2014." Answer ¶ 66. Then, "on May 20, 2014, Nationstar allegedly sent correspondence to [Burke]'s counsel responding to [Burke]'s disputes," explaining "that some of the information requested by [Burke] 'does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential." *Id.* Nationstar asserts that it "answer[ed] [Burke]'s servicing questions and enclosed [several] documents with its May 20, 2014 response." *Id.* Burke refutes having received this correspondence. Compl. ¶ 65–66.

Burke eventually received a letter dated June 17, 2014, "from the Law Offices of Shapiro Brown & Alt, LLP" ("SBA"), notifying him that the firm had "been retained to initiate foreclosure proceedings to foreclose the Deed of Trust/Mortgage on his property." *Id.* ¶ 70. Then, "[b]y letter dated July 8, 2014, Nationstar sent to [Burke] a letter" informing him that he could "request the option for a face to face meeting with a Nationstar representative . . . within 30 days of the date of" the letter. *Id.* ¶ 92. Burke requested "a face-to-face meeting on numerous occasions," but "Nationstar sent [Burke] a letter stating that [he] refused to have [such] a face-to-face meeting." *Id.* ¶¶ 95–96.

To date, Nationstar "has not met with [Burke] face-to-face as required by the FHA guidelines, the Deed of Trust, and Virginia law, despite his repeated requests for such a meeting." *Id.* ¶ 100. "[O]n or about September 27, 2014, Nationstar [or its agent, John Doe

Company] . . . went to [Burke's] house and posted on the front door a bright red door hanger,"

instructing Burke to call Nationstar. *Id.* ¶ 105. "Nationstar made no attempt to meet with

[Burke] on the day it left the door hanger, despite the fact that [Burke's niece] opened the door

[to Nationstar]." *Id.* ¶ 107–108. SBA initially scheduled a foreclosure sale for September 17,

2014 but then ultimately rescheduled it to commence December 18, 2014. *Id.* ¶¶ 116–118. No

face-to-face meeting was attempted prior to the commencement of foreclosure on Burke's

property. *Id.* ¶ 111.

### III. LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but

early enough not to delay trial," and may raise the defense of failure to state a claim upon which

relief can be granted in that motion. *Integrated Direct Mktg., LLC v. May*, 143 F. Supp. 3d 418,

420 (E.D. Va. 2015). Such a motion is evaluated under the same standard as a Rule 12(b)(6)

motion to dismiss. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).[6]

"[U]nlike on a Rule 12(b)(6) motion," however, "on a Rule 12(c) motion the Court may

consider the Answer as well, and the factual allegations in the Answer are taken as true to the

extent they have not been denied or do not conflict with the Complaint." *Pro-Concepts, LLC*,

2014 WL 549294, at *5 (citation omitted); *see also Bremus*, 527 B.R. at 225 ("District courts

may consider the complaint, answers, matters of public record, exhibits to the complaint and

answer, and 'exhibits to the Rule 12(c) motions that were integral to the complaint and

authentic.'" (quoting *Massey*, 759 F.3d at 347). "[J]udgment on the pleadings is only

appropriate when, taking all of the non-moving party's factual allegations as true, no genuine

---

[6] Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007)). The Court "need not accept as true unwarranted inferences,
unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175,
180 (4th Cir. 2000). Detailed factual allegations are not necessarily required, but the facts pled must be
sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Id.* Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to
relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of
action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

issues of material fact remain and the case can be determined as a matter of law." *Pro-Concepts, LLC*, 2014 WL 549294, at *5.

## IV. ANALYSIS

The parties frame the issue before the Court as follows: whether the evidence now before the Court—proffered in the form of the Defendants' Answer, exhibits attached thereto, and exhibits attached to the Motion for Judgement on the Pleadings[7]—alters this Court's previous decision to deny the Defendants' Motion to Dismiss with respect to Counts II and III, while also providing a basis for dismissal of Counts IV and VII.

Burke refutes the availability of such a procedural tool, suggesting that a Rule 12(c) motion cannot be made if it reiterates the same arguments set forth in the Rule 12(b)(6) motion. Burke additionally argues that this Court's earlier decision—as the "law of the case"—precludes a Rule 12(c) motion. Finally, and alternatively, Burke argues that, at a minimum, genuine issues of material fact remain that preclude the case from being determined as a matter of law. The Court will address these issues seriatim.

### A. Threshold Matters

At the outset, the Court rejects Burke's threshold arguments regarding Nationstar's ability to bring the Motion for Judgment on the Pleadings. While the Court acknowledges that "[a] motion for judgment on the pleadings is not an opportunity to *re-litigate* issues raised and decided in a motion to dismiss," the Federal Rules do not flatly bar a defendant from asserting a Rule 12(c) motion for judgment on the pleadings simply because he or she previously asserted a Rule 12(b)(6) motion to dismiss. *Estep v. City of Somerset, Ky.*, No. CIV.A. 10-286-ART, 2011 WL 845847, at *2 (E.D. Ky. Mar. 8, 2011) (emphasis added). As noted in *Estep*, upon which both parties rely in addressing this issue, "there are some unique situations where allowing the defendant a second opportunity to raise arguments in favor of dismissing a claim is

---

[7] To the extent Nationstar has introduced materials *outside* the pleadings (*i.e.*, the Complaint and Answer) that are otherwise not integral to the Complaint and authentic, the Court will not consider them in deciding the Motion for Judgment on the Pleadings.

appropriate."[8]  *Id.*  A defendant may raise a Rule 12(c) motion after a Rule 12(b)(6) motion

under the following circumstances:

> Where (1) the court's decision denying the motion to dismiss raises new or
> unexpected issues, (2) the defendant produces legal authority and/or evidence in
> response to the court's decision, (3) the plaintiff's claim must fail as a matter of
> law and cannot be saved with any amount of discovery, and (4) dismissing the
> claim will save the parties' and the court's resources, ruling on the defendant's
> 12(c) motion may be appropriate.

*Id.*

Curiously, Burke argues only that Nationstar has not suggested "that the [C]ourt's

previous decision (1) raised new or unexpected issues or that (2) there is legal authority contrary

to the [C]ourt's decision." Pl.'s Opposition to Def.'s Mot. Judgment on Pleadings (ECF No. 29).

Omitted from Burke's argument, a Rule 12(c) motion is also appropriate where the defendant

produces *evidence* in response to the Court's decision.  Here, Nationstar has done just that,

attaching and referencing documents not before the Court—and thus not considered by the

Court—when it decided the Rule 12(b)(6) motion.  Thus, the Court's consideration of

Nationstar's 12(c) motion is not precluded simply because Nationstar brought a 12(b)(6) motion

before the pleadings closed.

With respect to Burke's argument that the *denial* of the Motion to Dismiss constitutes

the "law of the case," it is well settled that the "*denial* of a motion to dismiss remains subject to

reconsideration until the Court enters final judgment in the case." *Columbia Gas Transmission,

LLC v. Ott*, 984 F. Supp. 2d 508, 523 (E.D. Va. 2013) (emphasis added); *see also Pérez–Ruiz v.

Crespo–Guillén*, 25 F.3d 40, 42 (1st Cir. 1994) ("Appellants first challenge the dismissal order

on the ground that the earlier district court ruling denying the motion to dismiss in the Lopez

action became the 'law of the case' in the consolidated action.  Appellants misapprehend the 'law

of the case' doctrine.  Interlocutory orders, including denials of motions to dismiss, remain open

---

[8] In fact, "Rule 12(c) cannot be used to assert Rule 12(b) defenses that have not been raised
previously in the pleadings or by preliminary motion." 5C Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1367 (3d ed. 2004).  In such a circumstance, the Rule 12(c) motion will
have been deemed waived. *Id.*

to trial court reconsideration, and do not constitute the law of the case.") (citations omitted).

Accordingly, the "law of the case" doctrine does not preclude the Court's consideration here.

## B. Discussion

Nationstar seeks dismissal of all claims remaining against it and trifurcates its Motion for Judgment on the Pleadings, arguing that: (1) the claims alleging violations of the federal and Virginia ECOA (Counts II and III) fail to state a claim upon which relief can be granted; (2) the claim alleging violation of RESPA (Count IV) fails to state a claim upon which relief can be granted; and (3) the claim alleging breach of contract (Count VII) fails to state a claim upon which relief can be granted. The Court addresses each argument in turn.

### 1. Counts II and III: Violations of the Federal and Virginia Equal Credit Opportunity Act

Burke alleges that Nationstar violated the federal and Virginia ECOA through its failure to provide an adverse action letter after it revoked the permanent modification agreement allegedly received by Burke. Nationstar argues that it was relieved of its obligation to provide an adverse action notice because Burke—by applying for a TPP and making reduced payments— was in default on his loan. Thus, Nationstar reasons, no "revocation of credit"[9] occurred and it was not required to provide any notice.[10]

Under the ECOA, it is illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). The ECOA's notice requirement provides: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." *Id.* § 1691(d)(2). "Adverse action" means "a denial

[9] According to Nationstar, it was not required to provide any notice because the definition of "adverse action" in the ECOA does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit. *See* 15 U.S.C. § 1691(d)(6).

[10] Alternatively, Nationstar contends that it provided Burke with a written statement of reasons for rejecting his application, thereby complying with ECOA's notice requirements. The Court need not reach this argument.

or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." *Id.* § 1691(d)(6). "Adverse action" does not include "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." *Id.* The ECOA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

The Court previously acknowledged that "[Burke] alleges that his loan had been permanently modified and that he performed as required by the permanent loan modification agreement." *Burke v. Nationstar Mortg., LLC*, No. 3:14cv837, 2015 WL 4571313, at *8 (E.D. Va. July 28, 2015). As a result, the Court denied Nationstar's Motion to Dismiss with respect to Burke's ECOA claims, distinguishing Burke's case from cases then cited by Nationstar,[11] which— as this Court previously explained—held "that borrowers who make timely payments pursuant to a TPP and are then denied a permanent modification cannot state an ECOA claim because the borrowers were in default at the time the permanent modification was denied." *Id.* (citing cases).

Nationstar now argues that the pleadings and attachments—previously not before the Court—contradict the Complaint[12] and demonstrate that Burke did not perform as required by

---

[11] Nationstar relied on the following cases: *Guthrie v. Bank of Am., Nat'l Ass'n*, 2012 WL 6552763, at *6 (D. Minn. Dec. 14, 2012) ("Plaintiffs do not dispute that they had defaulted on their mortgage by the time of their loan modification request. As a result, Bank of America's denial of this request did not amount to an 'adverse action,' and it did not trigger ECOA notice requirements."); *Pandit v. Saxon Mortg. Servs., Inc.*, 2012 WL 4174888, at *7 (E.D.N.Y. Sept. 17 2012) ("[A] denial of a HAMP loan modification does not trigger the ECOA's adverse action explanation requirement because the TPP did not alter the terms of Plaintiffs' underlying loan obligations."); *Eichholz v. Wells Fargo Bank, NA*, 2011 WL 5375375, at *9 (E.D. Mich. Nov. 7, 2011) ("The HAMP trial program did not modify Plaintiff's underlying mortgage obligations and Plaintiff was already in default on April 29, 2010, when Defendant notified Plaintiff of the modification decision.").

[12] "When considering a Rule 12(c) Motion," the Court "is not required to accept as true conclusions or inferences from the Complaint which contradict the attached exhibits." *Canal Ins. Co. v.*

the permanent loan modification agreement.  The Court agrees.  The Loan Modification

Agreement expressly instructed Burke to "sign and have the documents notarized," warning him

that the "modification will not be processed *unless* Nationstar received[d] the original

documents by its due date."  Loan Modification Agreement at 8 (emphasis added).  Despite this

conditional requirement, the Loan Modification Agreement indicates that Burke failed to

notarize the document as required.[13] *See id.* at 18.  As such, no permanent modification of

Burke's Loan was processed,[14] Burke remained in default, and Nationstar was relieved of its

"obligation to comply with Subsection 1691(d)(2)'s adverse action notification requirement."

*Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *8 (D. Md.

Jan. 22, 2013); *see also Guthrie*, 2012 WL 6552763, at *6; *Pandit*, 2012 WL 4174888, at *7;

*Eichholz*, 2011 WL 5375375, at *9.  Accordingly, the Court will dismiss Counts II and III.

### 2.  Count IV: Violation of the Real Estate Settlement and Procedures Act

Nationstar argues that Burke's RESPA claim in Count IV fails to state a claim upon

which relief can be granted because "on May 20, 2014, Nationstar sent correspondence to

[Burke's] counsel responding to [Burke's] disputes."  Def.'s Mem. Supp. to Mot. Dismiss at 19

(citing Answer ¶ 66).  In support, Nationstar quotes from its Answer—and attaches thereto[15]—a

---

*Barker*, No. 3:07cv339, 2007 WL 3551508, at *2 (E.D. Va. Nov. 15, 2007), *aff'd*, 358 F. App'x 470 (4th Cir. 2009).

[13] Burke suggests that the Loan Modification Agreement need not have been notarized under Virginia law.  Pursuant to Virginia Code § 17.1-223, however, in order for a deed of a trust to "be presumed to have been notarized properly and . . . recorded by the clerk," it must have been "properly notarized in accordance with the Virginia Notary Act (§ 47.1-1 *et seq.*)," which requires that "every notarial act must contain . . . a photographically reproducible notary seal/stamp," *Randall v. Clarke*, No. 3:14cv562, 2015 WL 4705506, at *12 n.13 (E.D. Va. Aug. 6, 2015).

[14] Importantly, Burke has not otherwise alleged that Nationstar "perform[ed] under the terms of the [Loan Modification Agreement]." *Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 197 (4th Cir. 2014).

[15] The Court may consider the letter on a Rule 12(c) motion as part of the pleadings. *See Bremus*, 527 B.R. at 225 ("District courts may consider the complaint, answers, matters of public record, exhibits to the complaint and answer, and 'exhibits to the Rule 12(c) motions that were integral to the complaint and authentic.'" (quoting *Massey*, 759 F.3d at 347)).

five-page letter purportedly sent to Burke, answering Burke's servicing questions. Answer ¶ 66; Letter from Nationstar to Burke (May 20, 2014) (ECF No. 24-2).

Burke refutes the authenticity of the letter, arguing that he never received it. This contention comports with the allegations in the Complaint. *See* Compl. ¶¶ 65–66. Importantly, beyond a copy of the letter itself, Nationstar offers nothing in the form of proof that the letter was, in fact, mailed.[16] Thus, at a minimum, taking the non-moving party's allegations as true, there remains a genuine dispute of material fact with respect to whether Nationstar actually mailed the five-page letter to Burke. Accordingly, the Court will deny Nationstar's Motion for Judgment on the Pleadings on Count IV.

### 3. Count VII: Breach of Contract

Burke alleges that the FHA-backed Deed of Trust was a contract he had with Nationstar and that Nationstar breached that contract by failing to conduct a face-to-face interview with Burke prior to accelerating and initiating foreclosure. "To prevail on a breach of contract claim under Virginia law, a plaintiff must show that: (1) the defendant owed her a legally enforceable obligation; (2) the defendant violated that obligation; and (3) she suffered injury or damage as a result of the defendant's breach." *Covarrubias v. CitiMortgage, Inc.*, 623 F. App'x 592, 593 (4th Cir. 2015) (citing *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). "The plaintiff bears the burden of establishing the causal link between the alleged breach and damages claimed." *Id.* (citing *Saks Fifth Ave., Inc. v. James, Ltd.*, 630 S.E.2d 304, 311 (Va. 2006)).

Nationstar argues that Burke's breach of contract claim in Count VII fails to state a claim upon which relief can be granted because Burke's house was never actually foreclosed upon.

---

[16] Burke attaches an affidavit from his counsel, Brandon Snodgrass, Esquire, suggesting that no correspondence was received from Nationstar dated May 20, 2014. Nationstar argues that the affidavit from Mr. Snodgrass cannot be considered because documents outside the pleadings cannot be considered on a Rule 12(c) motion. Nationstar is correct.

But Mr. Snodgrass's affidavit need not be considered for the Court to determine that a dispute of fact remains regarding whether the letter was actually mailed. The mere existence of the letter attached plainly does not establish this critical point. Further, the Collection History Profile, also attached to Nationstar's Answer, does not foreclose the possibility that the letter was not mailed to Burke. *See* Collection History Profile. At this juncture, the Court must view take the non-moving party's allegations as true. *See Pro-Concepts, LLC*, 2014 WL 549294, at *5.

As a result, Nationstar contends, Burke has not alleged any damages.  Burke, on the other hand, posits that he "has clearly alleged injury resulting from [Nationstar's] failure to have the face-to-face meeting designed to prevent the initiation of foreclosure by, in fact, instituting foreclosure." Pl.'s Opp'n to Def.'s Mot. Dismiss at 22 (citing Compl. ¶¶ 90–118).  Specifically, Burke notes that he alleges credit injury, acceleration of his loan, initiation of foreclosure, and the fact that he had to hire an attorney to file a lawsuit to stop the foreclosure. *Id.*

That said, Burke admits that he "is not seeking [the] actual damages that he suffered." *Id.* Instead, he "seeks injunctive relief to redress his injury and threatened injury, which would include sending someone to his house with the authority to provide a repayment plan." *Id.* (citation omitted).  In response, Nationstar devotes significant briefing to disputing the notion that a breach of contract claim is a proper mechanism for Burke's attempt to seemingly avert impending harm to his rights.

At bottom, the parties appear to dispute not whether Burke has actually alleged damages, but whether Burke may seek injunctive relief on his breach of contract claim.  The Court declines to make this determination at this juncture. *See Meeks v. Emiabata*, No. 7:14cv00534, 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015) (noting that Rule 12(b)(6) "does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety"); *see also Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014) ("[E]ven assuming defendants are correct that [plaintiff] is limited exclusively to injunctive relief for his claim in Count II, there is no basis for the court to address the nature of the appropriate relief at this stage of the proceeding.").  Accordingly, the Court will deny Nationstar's Motion for Judgment on the Pleadings on Count VII.

## V. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Nationstar's

Motion for Judgment on the Pleadings.  ECF No. 25.  The Court will dismiss Counts II and III of

Burke's Complaint.  An appropriate Order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

Richmond, Virginia
Date